IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA CARROLL-PITTS, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | NO. 07-02716 |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA FREE | : | |
| LIBRARY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

Giles, J.                                                                                                                    October 3, 2008

      Before the court is Defendants City of Philadelphia Free Library of Philadelphia and Kevin Vaughn's Motion for Summary Judgment as to Plaintiff Linda Carroll-Pitts' claims of retaliation and gender-based discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), et seq. and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, et seq. For the reasons that follow, the court grants Defendants' motion for summary judgment.

**Summary of Relevant Factual Allegations**

      Effective October 14, 1996, Ms. Carroll-Pitts was hired as a Public Relations Specialist II for Free Library of Philadelphia ("Library"), a municipal agency of the City of Philadelphia. (Employee History Record, Def. Ex. A.)  She was promoted to the position of Library Public Relations Director on January 14, 2002. (Id.)  Sue Seiter initially conducted Ms. Carroll-Pitts' daily supervision, and then Sandy Harrocks took over this responsibility after Ms. Seiter left her job. (Carroll-Pitts Dep., Def. Ex. B at 25-26, 30; Shelkrot Dep., Def. Ex. C at 133-34, 136.) However, because both Ms. Seiter and Ms. Harrocks were employees of the Library Foundation,

not the City of Philadelphia, Kevin Vaughn, the Associate Director of the Library, was at all relevant times Ms. Carroll-Pitts' next ranking supervisor for purposes of civil service. (Carroll-Pitts Dep., Def Ex. B at 26, 39). Ms. Harrocks drafted Ms. Carroll-Pitts' performance evaluations, but Mr. Vaughn signed off on them. (Id.)

<u>Plaintiff's alleged incidents of harassment.</u>

Ms. Carroll-Pitts believed that she was harassed during disputes with Mr. Vaughn over subordinates' time sheets and scheduling accommodations.

A.  Time Sheets Dispute

Conflicts between Ms. Carroll-Pitts as Ms. Vaughn arose at least by December 2003. In December 2003, Ms. Carroll-Pitts returned from her lunch break to find her staff leaving work. (Id. at 71.) Ms. Carroll-Pitts asked where they were going, and her Administrative Assistant informed her that Ms. Harrocks had granted them permission to leave early. (Id.) Ms. Carroll-Pitts said "okay," but because she was unsure who had granted the permission to leave early, declined to leave herself, and was reluctant to sign off on the employees' time sheets which reflected a full day of work. (Id. at 71-72.) Ms. Carroll-Pitts took the employees' time sheets to Mr. Vaughn, and asked him to sign off on them because she was uncomfortable doing so. (Id. at 73.) At this point, Ms. Carroll-Pitts alleges, "he harassed me. He got this close in my face and screamed at me as he turned beet red and said, 'I'm your supervisor. I tell you what to do. You sign that time sheet.'" (Id.) They proceeded to have a discussion with Artrice Braxton of Human Resources, who asked Ms. Carroll-Pitts to "not make such a big deal of this" and sign the time sheets. (Id. at 74.) Ms. Carroll-Pitts claims that she then did so, "under duress and harassment."

(Id.)

Ms. Carroll-Pitts felt that Mr. Vaughn harassed her and did so on account of her gender. (Id. at 79.) She alleges that she has seem him treat other people the same way: "In a public meeting I've seem him talk unprofessionally and very mean spirited to other women that were in the office. I saw him snatch papers out of one of the secretary's hands, and I experienced it first hand." (Id. at 79-80.)

B.   Dispute Concerning Ms. Slurzberg's Religious Accommodations

Around Fall 2003, two of Ms. Carroll-Pitts' staff members came to her and complained that Gayle Slurzberg was getting special consideration for her work hours. (Id.). Ms. Slurzberg was of the Orthodox Jewish faith and had been working an adjusted schedule to accommodate her religious beliefs since at least 2002. (Bradley Dep., Def. Ex. B at 110.) Ms. Caroll-Pitts alleges that at the time, she was unaware of Ms. Slurzberg's religion or the tenents of that religion. (Carroll-Pitts Dep., Def. Ex. B at 93.) Ms. Carroll-Pitts spoke with Lynn Washington, Ms. Slurzberg's immediate supervisor, who explained to her why Ms. Slurzberg was receiving scheduling accommodations. (Id. at 94-96.) Ms. Carroll-Pitts alleges that she still remained unsure how to respond to her subordinates' complaints, so she approached Ms. Braxton and Mr. Vaughn for guidance. (Id. at 97.) Ms. Caroll-Pitts alleges that Mr. Vaughn told her he would get back to her, but after "quite a few months passed" without response and staff members continued to complain about Ms. Slurzberg's schedule, she again approached Ms. Braxton for assistance. (Id, at 98.) Ms. Braxton replied that she would speak to Mr. Vaughn and respond to Ms. Carroll-Pitts. (Id.) Ms. Carroll-Pitts alleges that almost a year passed without response. (Id.)

On October 14, 2004, Ms. Carroll-Pitts discussed Ms. Slurzberg's schedule with Ms.

3

Harrocks and Mr. Vaughn during their weekly management meeting. (Id. at 115.) According to Ms. Carroll-Pitts, Mr. Vaughn decided that Ms. Slurzberg could leave early when necessary, but would have to use vacation time or go without pay if she had no vacation time remaining, and Ms. Carroll-Pitts should convey this decision to Ms. Washington. (Id. at 116-17.)

A few days later, Ms. Carroll-Pitts learned that Ms. Washington had authorized further schedule modifications without her consent, and she requested another meeting with Mr. Vaughn, which was scheduled for October 28, 2004. (Id. at 126-27.) Ms. Carroll-Pitts alleges that at this meeting, she asked Mr. Vaughn if he could meet with her and Ms. Washington so that they could all "be on the same page," but he refused to do so, telling her to handle it. (Id. at 126.) Following this meeting, Ms. Carroll-Pitts sat down with Ms. Washington and Maria West, the Payroll Supervisor, to devise a schedule for Ms. Slurzberg. (Id. at 129.) They did so, and presented it to Ms. Slurzberg. (Id. at 134.) Ms. Slurzberg felt that it did not meet her needs, and she said she would speak to Mr. Vaughn about it. (Id.)

Ms. Carroll-Pitts alleges that by at least the time of the October 28, 2004 meeting, she "was beginning to feel the harassment from Kevin [Vaughn], the tone of his voice, his refusal to even want to help me resolve the issue. When I came to him and asked for help, he refused to help me." (Id. at 130.) She alleges that she attributed this treatment to her gender because she had seen him "demonstrate the same type of behavior with other women." (Id. at 131.) When asked if she had any other basis for this belief, Ms. Carroll-Pitts replied, "at that point that's how I felt, and I will think about it some more. And if I have some information, I'll be happy to share it with you." (Id. at 132.)

Ms. Carroll-Pitts, later in her deposition, raised the issue of an e-mail written from Mr. Vaughn, after her layoff, in which he referred to another female employee as a "tar baby" and

4

"wicked to the core."  (Id. at 199-201; Vaughn Dep., Pl. Ex. B at 210-11.)

Within about two weeks of the October 28, 2004 meeting, Ms. Slurzberg went to speak with Mr. Vaughn to discuss problems about her schedule and complain about Ms. Carroll-Pitts' treatment of her.  (Vaughn Dep., Def. Ex. D at 83-84.)  Ms. Carroll-Pitts did not know this meeting was taking place, but during this meeting, she "felt that something wasn't right," and she entered Mr. Vaughn's closed office without knocking.  (Carroll-Pitts Dep., Def. Ex. A at 136-37.)  Mr. Vaughn conveyed to Ms. Carroll-Pitts that he and Ms. Slurzberg had worked out a suitable schedule for her.  (Id. at 141.)  Ms. Carroll-Pitts disagreed with the proposed schedule, and alleges Mr. Vaughn spoke to her in an inappropriate tone in front of her subordinate.  (Id. at 143.)

After this meeting, Ms. Carroll-Pitts wrote to Mr. Vaughn to inform him that Ms. Slurzberg's schedule was inconsistent with his prior instructions.  Mr. Vaughn telephoned Ms. Carroll-Pitts in response.  Ms. Carroll-Pitts alleges that she expressed frustration at how the situation was being handled.  (Pl. Ex. A at Ex. 4.)  She alleges that Mr. Vaughn then stated in a raised voice, "Linda you just want to pick a fight," to which she replied that they were not fighting, but rather having a debate.  (Id.)  She further alleges that Mr. Vaughn stated, "Well if this is a debate you lose," and "There is no democracy here, I'm in charge."  (Id.)  Ms. Carroll-Pitts admits that during the course of this conversation, she raised her voice and expressed frustration with Mr. Vaughn. (Carroll-Pitts Dep., Def. Ex. A at 157.)

Ms. Carroll-Pitts alleges that she attempted to schedule a meeting with Mr. Vaughn the next day, but he refused.  (Pl. Ex. A at Ex. 4.)  On November 12, 2004, Ms. Carroll-Pitts emailed Mr. Vaughn to apologize for their heated phone conversation.  (Carroll-Pitts Dep., Def. Ex. A at 159.)  Mr. Vaughn accepted her apology but informed her that he planned to discipline her.  (Pl.

5

Ex. A at Ex. 4.)  A disciplinary meeting was held on December 2, 2004, but no disciplinary action was taken before Ms. Carroll-Pitts was laid off.  (Carroll-Pitts Dep., Def. Ex. A at 173.)

### Plaintiff's Complaints of Harassment

Plaintiff complained of harassment in three instances.  In December 2003, after Ms. Carroll-Pitts argued with Mr. Vaughn about who should sign staff members' time sheets, she expressed concern to Ms. Braxton, the Human Resources Manager.  She also made a formal complaint to Mr. Shelkrot, Mr. Vaughn's direct supervisor, which is documented in Mr. Shelkrot's notes.  (Pl. Ex. C at 76.)

Second, she complained to Mr. Shelkrot at a February 2004 meeting in which they discussed her 2003 performance review.  (Def. Ex. A at 61.)

Third, on December 14, 2004, Ms. Carroll-Pitts, through her attorney, sent Human Resources a letter alleging that Mr. Vaughn was harassing and intimidating her because of her gender.  (Id. at 188-89.)  She requested a formal investigation of her allegations of gender-based discrimination.  (Id.)

### The Layoff Decision

Following an announcement that the City of Philadelphia was going to engage in city-wide layoffs, the Philadelphia Office of Labor Relations faxed a layoff timetable to City Departments on November 8, 2004.  (Layoff timetable, Def. Ex. E.)  The timetable granted the Library one week to complete the first step: determine layoff units, classes, and number of employees.  (Id.)  Mr. Vaughn was told that within that week, he needed to select four positions for layoffs.  (Vaughn Dep., Pl. Ex. B at 145-47.)  Mr. Shelkrot, the President and Director of the

Library, had to approve all actions. (Vaughn Dep., Pl. Ex. D at 269.) Mr. Vaughn selected Ms. Carroll-Pitts' position within the week, but he alleged that neither he nor Mr. Shelkrot thought this selection would result in her layoff; they thought because of her seniority, she would bump down to a lower position. (Id. at 272, 275-77; Shelkrot Dep., Def. Ex. C. At 88, 90-91.) On December 6, 2004, a layoff register was prepared for Ms. Carroll-Pitts's position. (Layoff Register, Def. Ex. I.)

 Mr. Vaughn and Mr. Shelkrot both claimed that the decision to eliminate Ms. Carroll-Pitts' position was made because they were forced to eliminate non-essential positions, such as public relations positions, before eliminating essential positions, such as librarians. (Vaughn Dep., Def. Ex. D at 267, Shelkrot Dep., Def. Ex. C at 82, 86-88, 151-53.) Mr. Vaughn further explained that the decision to eliminate Ms. Carroll-Pitts' public relations position, as opposed to the lower remaining position, was because of her position's higher salary. (Vaughn Dep., Def. Ex. D at 268-69.) Mr. Vaughn alleges that, when previously faced with layoff decisions, he had also chosen to eliminate public relations positions because they did not impact operations. (Id. at 268-69.)

 On January 10, 2005, Ms. Carroll-Pitts was informed of the pending termination of her position. (January 10, 2005 letter, Def. Ex. K.) Four days later, Ms. Carroll-Pitts requested to be demoted in lieu of layoff. (January 14, 2005 letter, Def. Ex. K.) On January 21, 2005, the City informed Ms. Carroll-Pitts that she could not bump down because her subordinate's layoff score was higher. (January 21, 2005 letter, Def. Ex. K.) Therefore, Ms. Carroll-Pitts was laid off. (Id.)

 Ms. Carroll-Pitts' layoff score was lower than her subordinate's in large part because of her performance reviews. Plaintiff's performance reviews started to decline in 2002. In 2002,

7

her overall rating was "satisfactory," but she was rated "improvement needed" in half of the individual ratings. (2002 Performance Report, Def. Ex. O.) Then in 2003, three female employees filed grievances or complaints <u>against</u> Ms. Carroll-Pitts for sexual harassment. (Vaughn Dep., Def. Ex. D at 116-19.) Ms. Carroll-Pitts' 2003 report was overall unsatisfactory, showing that improvement was needed in seven categories out of ten. (2003 Performance Report, Def. Ex. O.) Negative feedback included lack of preparation, untimely handling of tasks, low Library visibility, and taking overtime without authorization. (<u>Id.</u>) Ms. Harrocks prepared these reports, and Mr. Vaughn signed off on them. (<u>Id.</u>)

Ms. Carroll-Pitts has also alleged that her subordinate was willing to resign so that Ms. Carroll-Pitts could bump into her position, but Robert Bradley, the Library human resources manager at the time, said he was not sure if Central Personnel would approve it. (Carroll-Pitts Dep., Pl. Ex. A at 192-95).

On February 4, 2005, Ms. Carroll-Pitts appealed her layoff to the Civil Service Commission. (Appeal to Civil Service Commission, Pl. Ex. L.) Plaintiff alleged her layoff was not done in good faith. She had a hearing for her appeal on July 13, 2005. (Opinion of Civil Service Decision, Ex. L.) Ms. Carroll-Pitts alleged that Mr. Vaughn had harassed her and discriminated against her on account of her gender, which contributed to the layoff. (Carroll-Pitts Dep., Def. Ex. A at 197-99.) The Civil Service Commission denied Ms. Carroll-Pitts' appeal, finding no evidence of bad faith or improper action. (Opinion of Civil Service Decision, Ex. L.)

### Plaintiff's Administrative Charges

On or about January 27, 2005, Ms. Carroll-Pitts submitted a verified charge to the Equal

8

Employment Opportunity Commission ("EEOC").  (Complaint ¶ 6.)  This verified complaint was dually filed with the Pennsylvania Human Relations Commission ("PHRC").  (Id.)  Ms. Carroll-Pitts was permitted to bring her PHRA claims as of January 27, 2006, one year after the filing of the PHRC complaint.  (Complaint ¶ 7.)  On or about September 27, 2006, The EEOC found that Ms. Vaughn has been subjected to unlawful discrimination in the form of harassment by Mr. Vaughn, and the EEOC granted Ms. Carroll-Pitts a "Notice of Right to Sue" on her federal claims on or about April 3, 2007.  (Complaint ¶ 9.)  Ms. Carroll-Pitts timely filed a complaint in the Eastern District of Pennsylvania on June 29, 2007.  (Doc. No. 1.)  Following discovery, Defendants filed the pending motion for summary judgment.

**Standard of Review**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322-23.  An issue is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that

issue. Anderson, 477 U.S. at 248.

"In an employment discrimination case, the burden of persuasion on summary judgment remains unalterably with the employer as movant. The employer must persuade [the court] that, even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor." Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 362 (3d Cir. 2008) (citations omitted). In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." Seigel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

### Discussion

Ms. Carroll-Pitts has brought forth allegations of retaliation and gender-based discrimination. These allegations will be addressed in turn.

**I.      Retaliation**

Title VII provides as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Opposition to discrimination "can take the form of informal protests of discriminatory employment practices, including making complaints to management." Moore v.

City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) (internal quotation and citation omitted).

Under the McDonnell Douglas burden-shifting paradigm, the employee bears the initial burden of establishing a prima facie case of retaliation under Title VII. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The employee must prove that (1) she engaged in a protected employment activity under Title VII; (2) her employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the adverse action and the protected activity. Andreoli v. Gates, 482 F.3d 641, 649 (3d Cir. 2007); Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). If the employee establishes a prima facie case of retaliation, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. Marra, 497 F.3d at 300 (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997)). If the employer meets its burden, the burden of production returns to the employee, who must now show, by a preponderance of the evidence, that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Marra, 497 F.3d at 300 (citations omitted.).

To satisfy the adverse employment action requirement for a prima facie case of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006) (quotations and citation omitted).

"When one employee makes a charge under Title VII against another, some strain on workplace relationships is inevitable. Sides will be chosen, lines will be drawn, and those who were once the whistleblower's friends may not be so friendly anymore. But what the statute

11

proscribes is retaliation, not loyalty to an accused coworker or a desire to avoid entanglement in workplace controversy." Jensen v. Potter, 435 F.3d 444, 452 (3d Cir. 2006) (citations omitted), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

To show a causal connection between the employee's protected activity and the employer's adverse action, a plaintiff may rely on a "broad array of evidence." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000). An "unusually suggestive proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection," but "the mere passage of time is not legally conclusive proof against retaliation." Marra, 497 F.3d at 302 (quotations, citations, and alterations omitted). See also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n. 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.") The Third Circuit has explained:

> Where the time between the protected activity and the adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee, . . . or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole.

Marra, 497 F.3d at 302 (citations omitted).

If a plaintiff has made a prima facie case, and if the employer has responded with legitimate, non-retaliatory reasons for its actions, the plaintiff must next establish pretext. To

12

establish pretext, the plaintiff must show by a preponderance of the evidence that the employer's articulated reasons are false and that the discrimination or retaliation was the "real reason for the adverse employment action." Marra, 497 F.3d at 300-01 (quotation omitted).  It is not enough to show that "the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer." Fuentes v. Perskie, 32 F.3d at 764.

Ms. Carroll-Pitts engaged in three activities which she claims are protected under Title VII.  First, she claims that the concern she expressed to Ms. Braxton and the formal complaint to Mr. Shelkrot following the time sheets dispute in December 2003 constituted a protected action.  Second, she claims that her complaints to Mr. Shelkrot during the February 2004 meeting in which they discussed her 2003 performance review (see Def. Ex. A at 61) constituted a protected action.  Finally, Ms. Carroll-Pitts claims that the December 14, 2004 letter she wrote to the Library (Pl. Ex. D at Ex. 5) requesting an investigation into Mr. Vaughn's alleged discrimination against her was a protected activity.

Ms. Carroll-Pitts alleges that she suffered the adverse employment action of termination (Compl. 39, 57; Pl. Brief at 22-24.)[1]

---

[1] In her Response Contra Defendants' Motion for Summary Judgment, Ms. Carroll-Pitts adds discussion of an alleged adverse employment action of failure to recall at pp. 22-24. Plaintiff never amended her complaint to add this claim.  In the Title VII context, a trial court can only assume jurisdiction over a new claim if the actions alleged "are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)).  A plaintiff generally has 300 days from the date of the allegedly unlawful employment practice to raise a claim.  42 U.S.C. § 2000e-5(e).  Ms. Carroll-Pitts' failure to recall claim seems to be based on an alleged failure to recall her when Ms. Berry-McNaulty left her position with the Library in June 2005. (Pl. Response at 23).  Ms. Carroll-Pitts did not raise the failure to recall claim within 300 days of that date.  Of equal importance, Ms. Carroll-Pitts did not exhaust her administrative remedies on the failure to recall claim.  It was never asserted in the EEOC charge, and the EEOC never investigated the allegation.  Further, Defendants would be prejudiced if this court allowed the claim.  Ms. Carroll-Pitts did not put them on proper notice of the claim, so they

Even assuming that these actions are protected actions and that she suffered an adverse employment action, Ms. Carroll-Pitts' fails, as a matter of law, to establish that the adverse employment action she suffered was causally connected to the alleged protected activities. It is undisputed that the decision to layoff Ms. Carroll-Pitts occurred <u>before</u> she submitted the December 14, 2004 complaint. Thus, this complaint could not have been a motivating factor in her layoff. Therefore, in order to establish a <u>prima facie</u> retaliation claim, Ms. Carroll-Pitts would have to show a causal connection between her termination and the December 2003 complaints following the time sheet incident or the February 2004 meeting.

Ms. Carroll-Pitts has offered no evidence that her termination was causally connected to the December 2003 or February 2004 complaints. The termination decision did not occur until November 2004, and Ms. Carroll-Pitts made no other complaints in the intervening period. Ms. Carroll-Pitts claims that the heated phone dispute occurred right before the termination decision, but there is no assertion that Ms. Carroll-Pitts' engaging in the phone dispute constituted a protected activity. Thus, the timing of the alleged protected activities and the termination decision is insufficient to suggest causation, and Plaintiff presents no other circumstantial evidence to advance an inference of causation. <u>See</u> <u>Marra v. Philadelphia Hous. Auth.</u>, 497 F.3d 286, 302 (3d Cir. 2007).

Importantly, the ultimate termination decision resulted from the objective calculation of layoff scores. There is no allegation that the scores were improperly calculated, or that manipulation occurred because of a retaliatory motive. Ms. Carroll-Pitts accuses Mr. Vaughn of discriminating against her and contributing to her termination. However, Mr. Vaughn was only one person involved in the termination process. The layoff scores were calculated in part by Ms.

---

were not able to conduct discovery.

Hosendorf, who, coincidentally, is Ms. Carroll-Pitts' niece, and Central personnel.  In addition, Ms. Carroll-Pitts has put forth no evidence that Mr. Vaughn even actually knew of the complaints which she alleges are protected activities.

Even if Ms. Carroll-Pitts had established a prima facie case of retaliation, Defendants have proffered legitimate, nondiscriminatory reasons for the alleged retaliatory action.  It is undisputed fact that a budget crisis resulted in city-wide layoffs, and the Library was forced to cut positions and salaries.  Library personnel have explained that "non-essential" persons (i.e. non-librarians) were targeted for layoff.  Ms. Carroll-Pitts has not satisfied her burden to prove that these legitimate reasons are pretextual.

## II.   Gender-Based Discrimination

Title VII provides that "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1).  Title VII covers more than the terms and conditions of employment in the narrow contractual sense.  Faragher v. Boca Raton, 524 U.S. 775, 786 (1998) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998)).

Because Ms. Carroll-Pitts has provided no evidence that her position was eliminated because of her gender,[2] the court only considers her hostile work environment claim.  "Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably interferes

---

[2] Ms. Carroll-Pitts complains that she was unable to bump down into her subordinate's position.  Of note, the subordinate who retained the position was female.

with a person's performance or creates an intimidating, hostile, or offensive working environment." Weston v. Pennsylvania, 251 F.3d 420, 425-26 (3d Cir. 2001) (citing Meritor Savs. Bank FSB v. Vinson, 477 U.S. 57, 65 (1986)).  However, "Title VII . . . does not provide a remedy for every epithet or offensive remark." Wilkie v. Robbins, 127 S.Ct. 2588, 2616 (2007) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  "For [hostile work environment] sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive work environment." Weston, 251 F.3d at 426.

To establish a prima facie of hostile work environment sexual harassment, a plaintiff must demonstrate five elements:

      (1) she suffered intentional discrimination because of her sex;

      (2) the discrimination was severe or pervasive;

      (3) the discrimination detrimentally affected her;

      (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and

      (5) a basis for employer liability is present.

See Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006) (citations and footnotes omitted), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

The hostile work environment inquiry is both objective and subjective.  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive,

the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Harris, 510 U.S. at 21-22.

To determine whether an environment is hostile or abusive, a court "must look at numerous factors, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance." Weston, 251 F.3d at 426 (citations omitted). "[C]ourts should not consider each incident of harassment in isolation. Rather, a court must evaluate the sum total of abuse over time." Durham Life Ins. Co. v. Evans, 166 F.3d 139, 155 (3d Cir.1999) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990)). See also Marra, 497 F.3d at 303 (holding that it does not matter "whether each piece of evidence of antagonistic conduct is alone sufficient to support an inference of causation, so long as the evidence permits such an inference when considered collectively." ); Woodson v. Scott Paper, 109 F.3d 913, 921 (1997) (holding that the court "must determine whether the evidence is sufficient based on the whole picture.").

Ms. Carroll-Pitts fails to make a prima facie showing of hostile work environment. Ms. Carroll-Pitts fails on the first required element. She cannot show that she suffered intentional discrimination because of her sex. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998) (internal quotations, citations, and alterations omitted).

Ms. Carroll-Pitts claims that she was harassed during the time sheet dispute and the dispute over Ms. Slurzberg's schedule. She claims that Mr. Vaughn discriminated against her when he "physically got in her face and yelled at her when she asked for his assistance." (Pl.

17

Brief at 32.) She likewise claims that incidents where Mr. Vaughn ignored Ms. Carroll-Pitts' complaints or undermined her authority were discriminatory actions. (Id.) However, Ms. Carroll-Pitts fails to show that this conduct was sex-based. Ms. Carroll-Pitts has offered no direct evidence that any of this treatment was based even in part on her gender.

The only evidence Ms. Carroll-Pitts offers is circumstantial; she alleges that there was a pattern of behavior in how Mr. Vaughn treated females employees, which demonstrates that his conduct towards her was on account of her gender. However, the only evidence supporting this "pattern of behavior" is that Ms. Carroll-Pitts witnessed Mr. Vaughn snatch papers out of a female secretary's hands; that she witnessed Mr. Vaughn yell at Ms. Braxton, a female employee; and an email to a female employee referring to her as a "tar baby" and "wicked to the core." None of these incidents involved any gender-based or sexual language. "Tar baby" is a racially derogatory term, and not a gender-based term. Moreover, the "tar baby" reference did not even occur during Ms. Carroll-Pitts' tenure at the Library. Ms. Carroll-Pitts also alleges that she never witnessed Mr. Vaughn treat male employees in a similar manner, but, given the limited nature of these incidents and no evidence that the treatment is question was gender-based, this allegation is not sufficient to create a dispute of material fact.

The court need not proceed in its analysis because failure on this first element is fatal to Ms. Carroll-Pitts' claim. However, the court briefly explains that Ms. Carroll-Pitts would fail as to the second, third, and fourth requirements as well. Ms. Carroll-Pitts cannot show that the alleged discrimination was severe or pervasive. The court must consider the totality of the circumstances to decide whether a plaintiff has presented evidence that an alleged hostile working environment was severe or pervasive. Andrews, 895 F.2d at 1482. Ms. Carroll-Pitts only alleges a few incidents that occurred over a time period of a few years. She has advanced

no evidence that the effects of these incidents were pervasive or severe.

Ms. Carroll-Pitts has also failed to put forth evidence that she was detrimentally affected by the alleged discriminatory treatment, or that it would have detrimentally affected a reasonable person in similar circumstances. Accordingly, Ms. Carroll-Pitts has failed to make a <u>prima facie</u> case for either a retaliation or hostile workplace claim.

## **Conclusion**

For the foregoing reasons, summary judgment is granted in favor of Defendants and against Plaintiff on all Plaintiff's claims pursuant to Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.

An Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA CARROLL-PITTS, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | NO. 07-02716 |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA FREE LIBRARY OF PHILADELPHIA, et al., | : : | |
| | : | |
| Defendants. | : | |

## **ORDER**

AND NOW, this 3rd day of October, 2008, upon consideration of Defendants' Motion for Summary Judgment, and Plaintiff's Response, it is hereby ORDERED that Defendants' motion is GRANTED for the reasons set forth in the attached memorandum. Accordingly, judgment is entered in favor of Defendants on all counts.

BY THE COURT:

    S/ James T. Giles
                    J.